U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 9 2007

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

JERRY O. PRICE AND RUTH E. PRICE

VERSUS                                    CIVIL ACTION NO. 3:05CV2081

ROADHOUSE GRILL, INC., EASTGATE          JUDGE HICKS
ASSOCIATES, A PARTNERSHIP IN             MAGISTRATE HORNSBY
COMMENDAM, AND UNITED FIRE AND
CASUALTY INSURANCE COMPANY

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
## ON BEHALF OF ROADHOUSE GRILL, INC.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

Sidney E. Cook, Jr.
La. Bar Roll No. 01311
Matthew R. May
La. Bar Roll No. 29331

333 Texas Street, Suite 1700
PO Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850
E-mail: cook@cykg.com
E-mail: maym@cykg.com

ATTORNEYS FOR ROADHOUSE GRILL,
INC.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT ON BEHALF
OF ROADHOUSE GRILL, INC.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.     PHYSICAL LAYOUT OF THE ACCIDENT SITE
               AT THE RESTAURANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.     FACTS OF THE ACCIDENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.     PLAINTIFFS' ALLEGATIONS, THEORIES OF RECOVERY,
               & TESTIMONY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.     EXPERTS' TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    LAW AND ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.     SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.     LOUISIANA LAW ON PREMISES LIABILITY . . . . . . . . . . . . . . . . . . . . 12

        C.     IN THIS CASE, THE CAR-STOP IS NOT DEFECTIVE IN ANY
               MANNER.  FURTHERMORE, THE CAR-STOP ITSELF IS NOT
               UNREASONABLY DANGEROUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

               1.     THIS CAR-STOP WAS NOT DEFECTIVE IN ANY MANNER . . . . . 13

               2.     THE RELEVANT FACTORS TO CONSIDER WHEN
                      DETERMINING THAT A CAR STOP ITSELF IS NOT
                      UNREASONABLY DANGEROUS . . . . . . . . . . . . . . . . . . . . . . . . . 15

               3.     THE FACTORS SHOW THAT A CAR STOP ITSELF IS NOT
                      UNREASONABLY DANGEROUS . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Armstrong v. City of Dallas,
997 F.2d 62. (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Barnhill v. Louisiana Power & Light Co.
28,903 (La.App. 2 Cir. 2/26/97), 690 So.2d 890 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Celotex Corp. v. Catrell
477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Durman v. Billings,
38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,18,19

Fields v. Hallsville Indep. Sch. Dist.,
906 F.2d 1017 (5th Cir. 1990), cert. denied 498 U.S. 1026 (1991) . . . . . . . . . . . . . . . . . . . . . 11

Herrera v. Millsap,
862 F.2d 1157 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kendall v. Weingarten Realty Management Co.,
33,903 (La.App. 2 Cir. 9/27/00), 769 So.2d 171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,18,20

Lavespere v. Niagara Mach. & Tool Works, Inc.
910 F.2d 167 (5th Cir. 1990), cert. denied 510 U.S. 859 (1993) . . . . . . . . . . . . . . . . . . . . . . 11

Leonard v. Ryan's Family Steak Houses, Inc.
2005-0775 (La.App. 1 Cir. 6/21/06), 939 So.2d 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

Limbert v. Winn Dixie La. Inc.
622 So.2d 1178 (La.App. 4 Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Little v. Liquid Air Corp.
37 F.3d 1069 (5th Cir. 1994)(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Littlefiled  v. Iberia Bank
04-1334 (La.App. 5 Cir. 3/15/05), 900 So.2d 925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lujan v. National Wildlife Fed'n
497 U.S. 871, 110 S.Ct. 3177 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Manchack v. Willamette Industries, Inc.,
24,599 (La.App. 2 Cir. 6/23/93), 621 So.2d 649 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,16

Ports v. Circle K Stores, Inc.
395 F.Supp.2d 442 (W.D. La. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rogers v. Internation Marine Terminals, Inc.
87 F.3d 755 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sole Serve Corp. v. Westowne Assoc.
929 F.2d 160 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tipton v. Bossier Parish School Board,
441 So.2d 453 (La.App. 2 Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Trice v. Isaac
99-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Williams v. Orleans Parish School Board
541 So.2d 228 (La.App. 4 Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,18

Woods v. Federal Home Loan Bank Bd.
826 F.2d 1400 (5th Cir. 1987), cert. denied 485 U.S. 959 (1988) . . . . . . . . . . . . . . . . . . . 11

**Statutes**

Louisiana Civil Code Article 2317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Louisiana Civil Code Article 2317.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F.R.C.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

JERRY O. PRICE AND RUTH E. PRICE

VERSUS                                     CIVIL ACTION NO. 3:05CV2081

ROADHOUSE GRILL, INC., EASTGATE           JUDGE HICKS
ASSOCIATES, A PARTNERSHIP IN              MAGISTRATE HORNSBY
COMMENDAM, AND UNITED FIRE AND
CASUALTY INSURANCE COMPANY

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF ROADHOUSE GRILL, INC.

MAY IT PLEASE THE COURT:

## I.   INTRODUCTION

The plaintiffs have brought suit based on Louisiana law of strict liability and negligence for personal injuries suffered in a trip and fall over a concrete car-stop that was in a handicap parking space in front of a restaurant. However, there is no evidence that the concrete car-stop was defective in its condition, position, or in any other manner. Nor is there evidence of any other defective or unreasonably dangerous condition that may have caused the plaintiff to fall. Therefore, the only way the plaintiffs can recover from the defendant is by proving that the car-stop itself was unreasonably dangerous. This cannot be shown. Therefore, the plaintiffs cannot establish an action under Louisiana law of strict liability. Furthermore, in the absence of an unreasonably dangerous condition, there is also an absence of any duty owed by the defendant and therefore the plaintiffs also cannot establish an action under Louisiana's law of negligence. Accordingly, the defendant is

-1-

entitled, pursuant to Federal Rule of Civil Procedure article 56, to a motion for summary judgment and an order from the Court dismissing the plaintiffs' claims against the defendant with prejudice.

## II.   BACKGROUND

### A.   PHYSICAL LAYOUT OF THE ACCIDENT SITE AT THE RESTAURANT

The Roadhouse Grill restaurant is in the Eastgate Shopping Center. East 70th Street is to the south. (Ruth Price Deposition, Pg. 29, Lines 13-15).   Youree Drive is to the west. (Ruth Price Deposition, Pg. 29, Lines 16-25). East Kings Highway is to the east. (Id.).  The main strip of stores in the Eastgate Shopping Center is to the north. (Id.).  The entrance to the Roadhouse Grill is on the west side of the restaurant. (Ruth Price Deposition, Pg. 29, Lines 22-25).

There is a concrete sidewalk that runs north/south in front of the entrance to Roadhouse Grill on the west. (Mark Snow Affidavit, exhibit 3 - "Handicap Parking Layout Plan").  There are seven parking spaces that are perpendicular to this sidewalk; three handicapped spaces, a take-out parking space, and three regular parking spaces.  Id.  The three southernmost spaces are regular parking spaces.  Id.  To the north of those three parking spaces, there are two handicapped spaces, which for identification purposes, are labeled in the attached plan layout as "HC Space #1" and "HC Space #2." There is a handicap access aisle between HC Space #1 and HC Space #2.  Id.  Immediately north of those two handicapped spaces is a wheelchair accessible ramp going into the restaurant.  Id.  To the north of the ramp, there is a take-out parking space.  Id.  Finally, to the north of the take-out parking space, there is a handicap van access aisle and a handicap parking space, identified on the plan layout as "HC Space #3."  Id.

The Handicap Parking Layout Plan contains the measurements and also shows the position of the concrete car-stops in those parking spaces.  The car-stop over which the plaintiff claims to

have tripped is the car-stop shown in what is labeled on the Handicap Parking Layout Plan as HC

Space #2 – the handicap space immediately to the right (south) of the entrance ramp. (*See Generally*

Ruth Price Deposition, Pg. 34, Lines 11-18). The handicapped parking space car stops were painted

light blue and are depicted in the photographs attached to Ruth Prices' Deposition.

## B.    FACTS OF THE ACCIDENT

Ruth E. Price, her husband Jerry O. Price, their son David Price, and David's daughter went

to the Roadhouse Grill restaurant on East 70th Street on November 2, 2004 for a birthday dinner for

David Price. They parked in the handicapped space near the door of the restaurant that was

immediately to the right (south) of the entrance. (Ruth Price Deposition, Pg. 34, Lines 11-18; Pg. 45-

46, Lines 14-15; Pg. 96-97, Lines 20-4).[1] Ruth E. Price was on the passenger side of the automobile

driven by Jerry O. Price. Mrs. Price testified that she and her husband had probably parked in this

same spot in the six previous occasions when they had gone to the Roadhouse Grill in the year

preceding her accident. (Ruth Price Deposition, Pg. 35, Lines 20-24; Pg. 25, Lines 11-13; Pg. 26,

Lines 4-11).

The birthday party left Roadhouse Grill about 8:00 p.m. (Ruth Price Deposition Pg. 37, Lines

14-15). Ruth Price testified that she walked to the passenger side of the car in approximately the

same path she had used to walk from her car to the restaurant entrance. (Ruth Price Deposition, Pg.

38, Lines 17-22). Mrs. Price testified that she had probably gone around the car stop when entering

the Roadhouse Grill. (Ruth Price Deposition, Pg. 73, Lines 1-5). The other family members all went

to get into the car on the driver's side. (Ruth Price Deposition, Pg. 39).

---

[1] On the Mark Snow Affidavit, exhibit 3 - "Handicap Parking Layout Plan", the handicap space that Ms. Price tripped in is labeled "HC Space # 2."

Ruth E. Price rounded the front of the vehicle heading for the front passenger door. She tripped and fell forward. (Ruth Price Deposition, Pg. 40, Lines 22-25). She claims she tripped on the car-stop. (Ruth Price Deposition, Pg. 42, Lines 9-11). It was ultimately determined through Ms. Price's testimony that Mr. Price had failed to center his vehicle in the parking space. (Ruth Price Deposition, Pg. 47-48, Lines 25-12). The car-stop protruded from underneath the Price vehicle approximately 18 inches towards the south. (Ruth Price Deposition, Pg. 50, Lines 17-21). This catawampus alignment caused a portion of the car-stop to be exposed rather than being completely underneath the vehicle as it would have been had the vehicle been properly centered. For purposes of the motion for summary judgment, it is not disputed that Ms. Price in fact tripped on the car stop.

## C.   __PLAINTIFFS' ALLEGATIONS, THEORIES OF RECOVERY, & TESTIMONY__

The plaintiffs allege in their petition that they parked in the second handicap parking space to the right of the entrance to the roadhouse grill. (See Petition ¶8-9). They allege that this parking space did not have a parking access aisle on the passenger side of this space. Id. The plaintiffs allege that the failure to have an access aisle of 36 inches on the passenger side of the handicapped space violated the American with Disabilities Act Accessibility Guidelines and Louisiana R.S. 40:1733 and that non-compliance therewith rendered the parking space "defective" for purposes of Louisiana law on strict liability. (See Petition ¶24). As detailed below, this allegation was ultimately proven false by the plaintiff's expert.

When Ruth Price testified in deposition, she explained that her party had actually parked in the first handicapped space to the right of the entrance, not the second handicap parking space as was alleged in the petition. (Ruth Price Deposition, Pg. 34, Lines 11-18; Pg. 45-46, Lines 14-15; Pg. 96-97, Lines 20-4). This handicap parking space did have an ADA compliant access aisle. In fact, the

-4-

access aisle was 4.66 feet wide or approximately 56 inches, almost 55% wider as what the ADA requires.  (Mark Snow Affidavit, exhibit 3 - "Handicap Parking Layout Plan").  Additionally, as more thoroughly discussed in the next section, both the plaintiffs' and defendants' experts concluded that both handicapped parking spaces, the first and the second parking space to the right (south) of the entrance, complied with the ADA.  Thus, regardless of which space Ms. Price was in, the petition's allegations that the handicap space violated the American with Disabilities Act Accessibility Guidelines and Louisiana R.S. 40:1733 are unsupportable. This also makes the factual question as to what space Mr. Price tripped in immaterial for purposes of resolving this motion for summary judgment since either space was ADA compliant.

The plaintiffs' petition also alleged that a mercury or halogen light on a pole approximately 160 feet away blinded Ms. Price preventing her from seeing the curb stop.  (See Petition ¶12;14). The plaintiffs allege that the placement of such a bright light was negligent. (See Petition ¶24).  In her deposition, however, Ms. Price testified that she was unaware of any defective lighting (Ruth Price Deposition, Pg. 52, Lines 24-25) and, in fact, had no recollection of the lighting at all.  (Ruth Price Deposition, Pg. 100-101, Lines 21-3). Instead, it was Mr. Price, her husband, who was blinded by a "vapor light on 70th Street[2] about 125 feet away from the Roadhouse Grill." (Excerpt from Jerry O. Price Deposition, Pg. 14-15, Lines 24-3).  Mr. Price, however, did not trip and fall due to this alleged lighting condition.  Therefore, it played no role in Ms. Price's trip and fall accident.

Lastly, the plaintiffs' alleged that the car stop on which Ms. Price allegedly tripped was defective. However, aside from this initial conclusory allegation, there is no evidence of any specific defect (i.e. improperly positioned, broken, unsecured, etc.) with the car stop.  Furthermore, as

---

[2]There is no evidence that this vapor light was even on the Roadhouse Grill property.

detailed in the next section, the plaintiffs' expert testified that the car-stop was in full compliance with the American with Disabilities Act. Thus, the plaintiffs are left only with an argument, one advanced by their expert in addition to other unsupportable theories, that the car-stop itself was unreasonably dangerous.

## D.    **EXPERTS' TESTIMONY**

The plaintiffs hired Robert A. Lee as an expert to opine on the various ways the parking lot and parking spaces at the Road House Grill violated the ADA. Importantly, Mr. Lee testified that the parking spaces to the right[3] (south) of the Roadhouse Grill entrance were both compliant with the ADA. (Robert A. Lee Deposition, Pg. 45, Lines 16-21; Pg. 51, Lines 3-9, Lines 14-17). He also testified that the car-stop was compliant with the ADA. (Robert A. Lee Deposition, Pg. 50, Lines 17-24). Mr. Lee could not identify any defect with the car-stop.

Mr. Lee did state in his report and his testimony, however, that the elevation from the parking lot to the sidewalk was not in compliance with the ADA because there was an inch and a half to three inch height differential between the sidewalk running in front of the restaurant and the parking lot. (Robert A. Lee Deposition, Pg. 47, Lines 8-15). However, Mr. Lee eventually conceded that the change in elevation played no role in Mrs. Price's accident because Mrs. Price testified that she

---

[3]Mrs. Price's petition reads that they were parked in the southernmost space yet she testified in deposition that they were parked in the other space immediately to the right of the entrance. Since both spaces are ADA compliant, it is immaterial which space was actually used by the Prices.

did not trip while transitioning from the sidewalk to the parking lot.[4] (Robert A. Lee Deposition, Pg. 49, Lines 7-10; Pg. 50, Lines 11-16, 22-25; Pg. 51, Lines 1-2). In fact, Mrs. Price testified she did not even know that there was a height differential between the parking lot and sidewalk. (Ruth Price Deposition, Pg. 74, Lines 15-24).

Mr. Lee also counted 117 parking spaces around the Road House Grill. He opined that the ADA requires five handicap parking spaces. Because he only counted four handicap spaces, Mr. Lee opined that the parking lot was not in compliance with the ADA because it did not have the number of handicapped spots required by the ADA for the total number of parking spaces available. Obviously, whether the parking lot had four handicapped spaces or some other number played no causal role in Mrs. Price's trip and fall accident and Mr. Lee did not articulate any causal link. Additionally, since the plaintiffs were able to park in a handicap space, the number of handicap spaces available is not relevant.

After conceding that the parking space used by the Prices and the concrete wheel stop in the parking space complied with the ADA, and after conceding there was no causal link between the accident and the ADA violations he could identify, Mr. Lee's only other opinion was that concrete car stops themselves are dangerous. Specifically, when asked for the basis of his opinion as to why the concrete car stop presented a danger, Mr. Lee stated "People are tripping over them. They're stopping, nearly every place you go to now, there's - - do not use wheel stops." (Robert A. Lee Deposition, Pg. 52, Lines 15-19). Mr. Lee stated that he was advocating that there be no car stops.

---

[4] Mrs. Price testified: Q: Is it your testimony that your tripped over a car-stop? A: Yes (Ruth Price Deposition, Pg. 42, Lines 9-11); When asked about whether she had to negotiate between the pedestrian sidewalk and the parking lot, Mrs. Prices testified: A: Well, I didn't step up there I walked around the front of the car and went there where there is no step up there to go on. (Ruth Price Deposition, Pg. 94, Lines 12-14).

(Robert A. Lee Deposition, Pg. 53-54, Lines 25-4).  In support, Mr. Lee took pictures of parking spaces from various other Shreveport and Bossier City businesses that did not have wheel stops and claimed that "those are the type of parking areas that they're using now." (Robert A. Lee Deposition, Pg. 62, Lines 8-25).

Mr. Lee's pictures are attached to his deposition as exhibit 3.  Mr. Lee conceded that one purpose of a car stop is to keep a car from running up on the sidewalk. (Robert A. Lee Deposition, Pg. 53, Lines 2-5).  In this case, a pedestrian sidewalk, the building itself, and a customer waiting area are directly in front of the parking spaces and the parking space complained of. *See* (Mark Snow Affidavit, exhibit 3 - "Handicap Parking Layout Plan" and the pictures - exhibit 2).  Obviously, the car stops serve the purpose of preventing a parking motorist from encroaching on the pedestrian walk-way, could serve to stop a car from ramming a pedestrian or even driving through the building if, for example, a parking motorist accidently pressed the gas instead of the brake.  In the pictures from other businesses submitted by Mr. Lee, the parking spaces that did not have concrete car stops were not abutting a pedestrian walk-way or pedestrian area.  In those pictures that were abutting a pedestrian walk-way, there was a concrete curb and a grassy median which would function as a car stop.[5]  Mr. Lee's opinion that car stops are themselves dangerous is simply not supportable.  In fact, Mr. Lee conceded that the ADA references concrete car stops. (Robert A. Lee Deposition, Pg. 66, Lines 3-6).

Mr. Lee also took measurements of the concrete car stop at issue and measurements of the plaintiffs' vehicle.  According to Mr. Lee, the concrete car stop was 69 ½ inches wide.  (Robert A.

---

[5]In fact, in the picture on the bottom right of the first page of Mr. Lee's pictures, a concrete car stop is clearly evident in the space in front of the China Inn that does not otherwise have a concrete curb in front of it.

Lee Deposition, Pg. 55, Lines 18-20). Mr. Lee measured the plaintiff's vehicle as 74 inches wide. (Robert A. Lee Deposition, Pg. 55, Lines 21-23). Mr. Lee testified that according to his measurements, if Mr. Price had properly centered his vehicle when parking, the accident would not have occurred because the car stop would not have been protruding from a properly centered vehicle. (Robert A. Lee Deposition, Pg. 55, Lines 10-17, Pg. 56, Lines 3-6).

Mark W. Snow, P.E. was retained in this matter to perform a field investigation on the handicap spaces at the Roadhouse Grill and to provide an engineering opinion concerning the design of the handicap spaces. (Mark Snow Affidavit, ¶3). Mr. Snow photographed the accident location and performed field measurements. (Mark Snow Affidavit, ¶3). He directed and checked a draft of the Handicap Parking Layout Plan attached in support of this motion and referenced throughout. (Mark Snow Affidavit, ¶4; exhibit 4 - Handicap Parking Layout Plan). As did Mr. Lee, Mr. Snow testified that the handicapped parking spaces and the car stops in those spaces were compliant with the ADA federal regulations. (Mark Snow Affidavit, ¶8). Mr. Snow did not find any defects with the car stops. (Mark Snow Affidavit, ¶8). Mr. Snow also testified that the car stops are used to prevent cars from parking too close to the sidewalk and limiting the route in front of the spaces to less than the 36 inches as is required by the ADA. (Mark Snow Affidavit, ¶7). Additionally, Mr. Snow testified that the Department of Justice in its ADA Business Brief for Re-striping parking lots recommends the practice of using car stops on page 3 of 6. (Mark Snow Affidavit, ¶7; exhibit 5). That ADA Business Brief reads "If the accessible route is located in front of the space, install wheel-stops to keep vehicles from reducing width below 36 inches. (Mark Snow Affidavit, ¶7; exhibit 5). Additionally, Mr. Snow testified that the use of curb stops to prevent infringement into the accessible area in front of parking vehicles is common practice used in parking lot design and meets the

-9-

minimum ADA handicap parking standards. (Mark Snow Affidavit, ¶7). Lastly, Mr. Snow testified that it was his opinion that the car stops in the handicap parking spaces at the Roadhouse Grill did not present a dangerous condition. (Mark Snow Affidavit, ¶8).

Under these facts and the testimony given in this case, the defendants are entitled, as shown below, to a motion for summary judgment and an order dismissing the plaintiffs' case.

### III.   LAW AND ANALYSIS

**A.   Summary judgment standard**

This Court must grant a summary judgment when the pleadings, depositions, admissions, answers to interrogatories and documents, together with any affidavits, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrell, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); Rogers v. International Marine Terminals, Inc., 87 F. 3d 755, 758 (5th Cir. 1996). The substantive law governing the case determines what facts are material and what are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 444 (W.D. La. 2005). In Celotex Corp., the Court explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

. . . .

-10-

> In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp., 477 U.S. at 322-323, 106 S. Ct. at 2548.

Once the moving party makes the required showing, the burden shifts to the non-moving party to show that summary judgment is inappropriate. To avoid summary judgment, the non-moving party must, by submitting opposing evidentiary documents or referencing those already in the record, set out specific facts showing that a genuine issue of material fact exists. Id. at 324, 106 S. Ct. at 2548-49. See also Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F. 2d 167, 178 (5th Cir. 1990), cert. denied, 510 U.S. 859 (1993).

To defeat a properly supported motion for summary judgment, the non-moving party must adduce affirmative evidence. See Anderson, 477 U.S. at 250; Fields v. Hallsville Indep. Sch. Dist., 906 F. 2d 1017, 1029 (5th Cir. 1990), cert. denied, 498 U.S. 1026 (1991). Specifically, he must come forward with specific facts to oppose a motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 884-85, 110 S. Ct. 3177 (1990). Naked assertions of an actual dispute unsupported by facts do not suffice. Herrera v. Millsap, 862 F. 2d 1157, 1160 (5th Cir. 1989); Woods v. Federal Home Loan Bank Bd., 826 F. 2d 1400, 1413-14 (5th Cir. 1987), cert. denied, 485 U.S. 959 (1988). The court will not assume that the non-moving party could or would prove the necessary facts. Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 444 (W.D. La. 2005). The non-movant cannot satisfy its burden with "some metaphysical doubt as to the material fact" or with "conclusory allegations" or "unsubstantiated assertions". See Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc). Only evidence – not argument in a brief – will satisfy the

non-movant's reciprocal burden of proof. <u>See</u> <u>Solo Serve Corp. v. Westowne Assoc.</u>, 929 F. 2d 160, 166-67 (5th Cir. 1991).

Not only is "summary judgment . . . appropriate in **any** case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant,'" it is looked upon with favor and should be granted unless some genuine issue of fact is presented. <u>Little</u>, 37 F. 3d at 1075 (quoting <u>Armstrong v. City of Dallas</u>, 997 F. 2d 62, 67 (5th Cir. 1993)) (emphasis added).

## B.   <u>Louisiana law on premises liability</u>

Louisiana Civil Code Articles 2317 and 2317.1 are applicable to this case.  Article 2317 states:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Thus, in order to recover, plaintiff must establish that: (1) Roadhouse Grill had custody of the concrete car-stop; (2) the concrete car-stop contained a defect, *i.e.* a condition creating an unreasonable risk of harm; (3) the defective condition caused the Plaintiff's injuries; (4) actual or constructive knowledge of the defect by Roadhouse Grill; and (5) the damage could have been prevented by the exercise of reasonable care. *See* La. C.C. Art. 2317.1; <u>Ports v. Circle K Stores, Inc.</u>,

-12-

395 F.Supp.2d 442, 445 (W.D. La. 2005). The claim must fail if the plaintiff fails to prove any one

of these elements. Littlefield v. Iberia Bank, 04-1334 (La.App. 5 Cir. 3/15/05), 900 So.2d 925. For

purposes of this motion for summary judgment, defendants will concede that it had custody of the

concrete car-stop and that Mrs. Price tripped over it. Nevertheless, the plaintiffs cannot prevail on

the other elements of their claim, especially that the car-stop contained a defect or that the car-stop

created an unreasonable risk of harm.

**C.    <u>In this case, the car-stop is not defective in any manner.  Furthermore, the car-stop
       itself is not unreasonably dangerous</u>.**

The burden is on the plaintiff to prove that the thing is defective and that it poses an

unreasonable risk of harm.  Manchack v. Willamette Industries, Inc., 24,599 (La.App. 2 Cir.

6/23/93), 621 So.2d 649, 654. Applying Louisiana law, courts have generally held that the simple

fact that an accident occurred as a result of an alleged defect does not in and of itself 'elevate the

condition of the thing to that of an unreasonably dangerous condition.'  Ports v. Circle K Stores,

Inc., 395 F.Supp.2d 442, 445 (W.D. La. 2005). Logically then, there are two considerations. First

is the thing complained of defective?  Secondly, if it is defective, does the defect "elevate the

condition of the thing to that of an unreasonably dangerous condition"?

**1.    <u>This car-stop was not defective in any manner</u>.**

In this case, there is absolutely no evidence that the car stop was defective in any manner.

As Mark A. Snow, P.E. testified, there were no physical defects with the car stops in place at the

Roadhouse Grill. (Mark Snow Affidavit, ¶8).  As can be seen from the pictures taken by Mr. Snow

and the handicap parking layout plan attached to his affidavit as exhibits 2 and 3, and by the pictures

taken by the plaintiff attached to Mrs. Price's deposition, the car stops were not out of alignment,

were not cracked or broken, and were secured to the ground. Furthermore, and most telling, neither the plaintiffs' petition nor the plaintiffs' testimony in deposition ever allege a physical defect with the car stop itself. Instead, the plaintiffs alleged that the handicap spaces did not comply with ADA regulations, that a bright mercury or halogen light blinded Mrs. Price, and that the car stop was painted blue. However, those allegations prove insufficient or untrue and they do not allege a defect with the car stop. Specifically, the plaintiff's expert and Mark Snow both agreed that the handicap spaces and the car stops complied with ADA federal regulations. (Robert A. Lee Deposition, Pg. 45, Lines 16-21; Pg. 51, Lines 3-9, Lines 14-17; Pg. 50, Lines 17-24); (Mark Snow Affidavit, ¶8). Further, Mrs. Price was not blinded by the halogen or mercury light, her uninjured husband was, and, the light complained of by Mr. Price was located on 70th Street, the road running to the south of the Roadhouse Grill. (Ruth Price Deposition, Pg. 52, Lines 24-25; Pgs. 100-101, Lines 21-3; Jerry Price Deposition, Pgs. 14-15, Lines 24-3). That light therefore is irrelevant. Lastly, as demonstrated by the pictures attached to Mrs. Price's deposition and those attached to Mr. Snow's affidavit, the car stops were painted light blue, which was the same color as the paint used to delineate perimeters of the handicap spaces and the access aisle and clearly created a visible contrast between the car stops and the black asphalt pavement of the parking lot. Use of a different color is completely reasonable, not unreasonable, and certainly is not a defect. *See* Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 448-449 (W.D. La. 2005)(finding under the facts of that case that the differential in elevation between the concrete gray parking lot and the black or brown vertically faced sidewalk did not require a special warning such as a warning sign and/or yellow or red paint); Trice v. Isaac, 99-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843, 847(finding that a step made of the same material as the parking area did not constitute a defect); and Williams v. Orleans Parish School Board, 541 So.2d

-14-

228 (La.App. 4 Cir. 1989)(reasoning that where the sidewalk and the driveway were one light cement color and the parking lot was a darker asphalt, there was no defect creating an unreasonable risk of harm insomuch as the risk of harm would have been obvious to a person exercising ordinary care and prudence under the circumstances). There is simply no evidence in this case of a defective car stop. Accordingly, the plaintiffs are left with the allegation that the car stop itself is unreasonably dangerous, which is simply unsupportable.

**2.    The relevant factors to consider when determining that a car stop itself is not unreasonably dangerous.**

Even if the car stop was somehow defective, Louisiana law requires that the defect "elevate the condition of the thing to that of an unreasonably dangerous condition." Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 445 (W.D. La. 2005)(citing Durmon v. Billings, 38,514-CA (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 876); Manchack v. Willamette Industries, Inc., 621 So.2d 649, 654 (La.App. 2 Cir. 1993)(stating the plaintiff has the burden of proving...that the property was defective because it had a condition that created an unreasonable risk of harm). For a defect to create an unreasonable risk of harm, the defect must be of such a nature as to constitute a dangerous condition which would be expected to cause injury to a prudent person using ordinary care under the circumstances. Ports, supra. Furthermore, a potentially dangerous condition that should be obvious to all, is not unreasonably dangerous. Durman at 877. Moreover, where a risk of harm is obvious, universally known, and easily avoidable, the risk is not unreasonable. Id. The unreasonable risk of harm criterion are not applied mechanically. Ports at 445. Rather, the court must balance the claims and interests, weigh the risks and the gravity of harm, consider the individual rights and obligations, and must balance the probability and magnitude of the risk against the utility of the thing. Id. Other

-15-

factors are relevant such as the past accident history of the defect in question and the degree to which a danger may be observed by a potential victim. Id.   As to cases involving potential hazards in parking spaces, as in this case, Louisiana courts have considered important whether the alleged defect was located in an area of the parking space that would ordinarily be protected by the presence of a parked vehicle. Kendall v. Weingarten Realty Management Co., L.L.C., 33,903 (La.App. 2 Cir. 9/27/00), 769 So.2d 171, 174. (finding that an indentation in a parking space measuring twelve inches long by eight inches wide and one and one-half inch deep that the plaintiff alleged to have tripped in did not pose an unreasonable risk of harm because that defect represented a slight risk that was inconsequential when compared with the high utility of the parking lot particularly when the defect was located in an area of the parking space that would ordinarily be protected by the presence of a parked vehicle). Additionally, the location and the victim's familiarity with the area should be considered. Limberg v. Winn Dixie La., Inc., 622 So.2d 1178, 1179 (La.App. 4 Cir. 1993);   Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 450 (W.D. La. 2005)(noting that the plaintiff had been a patron of the Circle K at least one time before); Manshack v. Williamette Industries, Inc., 621 So.2d 649, 655 (La.App. 2 Cir. 1993)(noting that the plaintiff had previously been to the site of his accident a half dozen times before without mishap).  As shown below, all these factors weigh against a finding of an unreasonably dangerous condition being presented by the car stop in the handicap parking space at the Roadhouse Grill.

### 3.     The factors show that a car stop itself is not unreasonably dangerous.

In this case, the pivotal question is: did the car stop pose an unreasonable risk of harm to Mrs. Price.  Put another way, considering all the factors listed above, was Roadhouse Grill under a duty

to eliminate the car stops in the handicap parking spaces?  *Cf* Tipton v. Bossier Parish School Board, 441 So.2d 453, 455 (La.App. 2 Cir. 1983).  In this case, the answer is no.

The use of car stops is one of the common practices used in parking lot design and meets ADA handicap parking standards.  (Mark Snow Affidavit, ¶7).  The social utility of car stops is obvious, as is the use of car stops generally.  The plaintiff herself testified that as a general rule, she is familiar with car stops and their purpose.  (Ruth Price Deposition, Pg. 53, Lines 7-10).  She explained that car stops are used to stop cars from going onto sidewalks and to help guide people while parking.  (Ruth Price Deposition, Pg. 53, Lines 11-19).  According to the plaintiff's expert, car stops do serve the purpose of segregating the parking lot and preventing cars from moving up on the sidewalk in those situations where there is a not a curb.  *See Generally* (Robert A. Lee Deposition, Pg. 53, Lines 2-13).  In the Roadhouse Grill parking lot, there is a 6.5 foot concrete sidewalk that runs perpendicular to the handicap parking spaces that serves as an accessible route to connect the handicap access aisle and serves as the access route for adjacent parking spaces. (Mark Snow Affidavit, ¶6; exhibit 3- Handicap Parking Layout Plan).  The ADA requires that this accessible route have a minimum clear space of three feet.  (Mark Snow Affidavit, ¶6).  The car stops in the Roadhouse Grill handicap spaces prevented cars from infringing on this accessible route. (Mark Snow Affidavit, ¶7).  The Department of Justice even recommends using car stops in such a situation.  (See Mark Snow Affidavit, exhibit 5, pg. 3 of 6).  As can be seen by the pictures taken by Mr. Snow and by the plaintiff's pictures, the car stops guard the accessible route and protect pedestrians at the front entry way to the restaurant.

Logically, the risk of bumping a pedestrian and encroaching on the walk way in front of the restaurant thereby causing a greater hazard for walking patrons is greater than the tripping hazard

-17-

they present.  This is especially true given the fact that the car stops are usually completely covered by parked vehicles.  In fact, the plaintiff's expert testified that, according to his measurements of the car stop and the Price's vehicle, this accident would not have happened if Mr. Price had properly centered his vehicle.  (Robert A. Lee Deposition, Pg. 55, Lines 10-17).  This factor is relevant and important and tends to indicate that the thing is not unreasonably dangerous.  *Cf* Kendall v. Weingarten Realty Management Co., L.L.C., 33,903 (La.App. 2 Cir. 9/27/00), 769 So.2d 171, 174.

Furthermore, Mrs. Price testified that she had been to the Roadhouse Grill at least a half a dozen times in the year preceding her accident without incident.  (Ruth Price Deposition, Pg. 25, Lines 9-3; Pg. 26, Lines 4-11).  In fact, on those prior occasions, her party had parked in "pretty much the same" location and probably had parked in the same spot before.  (Ruth Price Deposition, Pg. 28, Lines 2-6; Pg. 35, Lines 20-24).  She had not had any past problems.  (Ruth Price Deposition, Pg. 35, Lines 14-19).  Mrs. Price did not notice anything different on the night of her accident than in those previous occasions. (Ruth Price Deposition, Pg. 7-16).  Furthermore, on the night of her accident, Mrs. Price had successfully walked into the restaurant without incident and probably walked around the car stop at that time.  (Ruth Price Deposition, Pg. 74, Lines 4-5).  She took the same path back to her car upon leaving the restaurant. (Ruth Price Deposition, Pg. 38, Lines 17-22).  Under Louisiana law, Mrs. Price was charged with the duty of using ordinary care under the circumstances, seeing what should have been seen and was bound to observe her course to see if the pathway was clear.  Durman v. Billings, 38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 877; Trice v. Isaac, 99-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843, 845; Williams v. Orleans Parish School Board, 541 So.2d 228, 230 (La.App. 4 Cir. 1989).  At night, a pedestrian such as Mrs. Price must proceed with greater caution than in daylight.  Williams, *supra*.

-18-

On the other hand, the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and a potentially dangerous condition that should be obvious to all is not unreasonably dangerous. Where the risk is obvious, universally known and easily avoidable, the risk is not unreasonable. Durman v. Billings, 38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 877. In this case, the use of car stops is universally known and, in fact, common. The plaintiff herself was aware of the car stops and easily avoided the car stop at issue upon entering the restaurant on the day of her accident and on the six previous occasions she had been there. This weighs against a finding of unreasonable risk.

Additionally, there is no evidence of any past accidents involving the car stops in the handicap parking spaces. One of the managers of the Roadhouse Grill at the time of Mrs. Price's accident and who had been working at Roadhouse Grill since February 1998 testified that he had no knowledge of anyone ever having fallen over a wheel stop before Mrs. Price's accident. (Davell McKay Deposition, Pg. 5, Lines 16-21; Pgs. 6-7, Lines 18-3; Pg. 10, Lines 2-4).

Considering all the relevant factors, the car stop in the handicap parking spaces at the Roadhouse Grill did not present an unreasonably dangerous condition. Such a finding is consistent with other Louisiana cases involving car stops. In each of the Louisiana cases involving trip and falls over concrete car stops, the courts have required something other than just the presence of a car stop in a parking lot. For example, in Leonard v. Ryan's Family Steak Houses, Inc., 2005-0775 (La.App. 1 Cir. 6/21/06), 939 So.2d 401, the court found that a blue painted tire stop was misaligned and broken exposing deteriorated concrete. There was also a protruding metal rod. Id. at 406. In that case, the car stop had been moved and it was jammed toward the sidewalk so close that the plaintiff could not place her foot between the sidewalk curb and the car stop. Id. at 407. Therefore,

-19-

the plaintiff stepped onto the top of the car stop. Id. When she placed her weight on the car stop, it moved causing her to fall. That car stop was considering unreasonably dangerous. Likewise, in Barnhill v. Louisiana Power & Light Co., 28,903 (La.App. 2 Cir. 2/26/97), 690 So.2d 890, the plaintiff tripped over a car stop that was not fastened to the ground. Id. at 891. The concrete car stop had been pushed into a crooked position. Id. The court remanded to the case on the issue of whether the plaintiff should have observed the misaligned car stop.[6] Such factors are not present in the case currently before this Court. Instead, the car stop had no physical defects at all. It was secured, in good shape, in proper alignment, painted in a different color than the pavement, easily observable and avoidable, had not caused other problems, served a legitimate purpose, would ordinarily have been covered by a parked vehicle, complied with ADA federal regulations, and its placement in the handicap spots abutting a pedestrian walk-way was even a recommended use in U.S. Department of Justice publications. It did not present an unreasonable risk of harm. The plaintiff's strict liability claims against Roadhouse Grill must therefore fail. And, because the car stop was not unreasonably dangerous, Roadhouse Grill also cannot be held negligent. Leonard v. Ryan's Family Steak Houses, Inc., 2005-0775 (La.App. 1 Cir. 6/21/06), 939 So.2d 401, 405 (stating the absence of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant); Kendall v. Weingarten Realty Management Co., 33,903 (La.App. 2 Cir. 9/27/00), 769 So.2d 171, 176 (observing that because the pothole was not an unreasonable risk of harm, the defendant did not act negligently).

---

[6]In each of those cases, had the presence of a car stop alone been sufficient for a finding of an unreasonably dangerous condition, those courts would not have had to analyze those other factors.

## IV.  <u>CONCLUSION</u>

In this case, there is no evidence that the concrete car-stop over which the plaintiff tripped was defective in its condition, position, or in any other manner. Nor is there evidence of any other defective or unreasonably dangerous condition that may have caused the plaintiff to fall. Therefore, the only way the plaintiffs can recover from the defendant is by proving that the car-stop itself was unreasonably dangerous. This cannot be shown. The analysis of the factors that Louisiana courts have deemed relevant for determining if a thing presents an unreasonable risk of harm all weigh in favor of a finding that the car stop in the handicap parking space of Roadhouse Grill was not unreasonably dangerous. Therefore, the Court should grant the defendants motion for summary judgment and dismiss the claims against it with prejudice.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation


By:_____
        Sidney E. Cook, Jr.
        La. Bar Roll No. 01311
        Matthew R. May
        La. Bar Roll No. 29331

333 Texas Street, Suite 1700
PO Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850
E-mail: cook@cykg.com
E-mail: maym@cykg.com

ATTORNEYS FOR ROADHOUSE GRILL,
INC.

CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been served on all counsel of record by placing a copy of same in the United States Mail, properly addressed and with adequate postage affixed thereon.

Shreveport, Louisiana, this _2 9ᵗʰ_ day of _January_____, 2007.

_____
OF COUNSEL

-22-