UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JERRY O. PRICE, ET AL. | CIVIL ACTION NO. 05-2081 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ROADHOUSE GRILL, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 35) filed by defendant Roadhouse Grill, Inc. ("Roadhouse Grill") and a Motion for Summary Judgment (Record Document 37) filed by defendants Eastgate Associates ("Eastgate") and United Fire & Casualty Company ("United Fire"). The plaintiffs, Jerry Price and Ruth Price, oppose the Motions for Summary Judgment. See Record Documents 39 & 41. For the reasons which follow, the Motions for Summary Judgment are **GRANTED** and the plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**I.  FACTUAL BACKGROUND.**

Ruth Price ("Mrs. Price"), her husband Jerry Price ("Mr. Price"), their son David Price, and David's daughter were patrons at the Roadhouse Grill restaurant on East 70th Street in Shreveport, Louisiana on November 2, 2004. See Record Document 35, Deposition of Ruth Price at 14, 34. Mr. Price parked their vehicle in one of the handicap parking spaces[1] near the entrance to the Roadhouse Grill. See id. at 34, 45-46 & 96-97.

---

[1] In the petition, the plaintiffs allege that they parked in the second handicap parking space to the right of the entrance to the Roadhouse Grill. See Record Document 1, ¶¶ 8-9. Yet, in her deposition, Mrs. Price states that her party actually parked in the first handicapped space to the right of the entrance. See Record Document 35, Deposition of Mrs. Price at 34, 45-46 & 96-97. The plaintiffs contend that the first handicapped space complied with the Americans with Disabilities Act ("ADA"), while the second handicapped space did not. Yet, this factual issue is not material to the outcome of this case, as both the plaintiffs' and defendants' experts concluded that both handicapped spaces complied

Mrs. Price had been to the Roadhouse Grill at least six times in the year preceding November 2, 2004. See id. at 25-26. On those prior occasions, she and her party parked in the same general location that they parked on November 2, 2004 and had probably parked in the same handicap spot before. See id. at 28, 35. Mrs. Price never had any difficulty making her way from the car into the Roadhouse Grill on her prior visits. See id. at 35.

When parking on November 2, 2004, Mr. Price did not center his vehicle in the parking space and the car stop[2] in the handicap space protruded from underneath the vehicle approximately 18 inches. See id. at 47-48, 50. Mrs. Price did not have any problems walking to the entrance of the Roadhouse Grill and probably walked around the car stop at that time. See id. at 74. Upon exiting the Roadhouse Grill, Mrs. Price traveled approximately the same path she had used to enter the restaurant. See id. at Deposition of Mrs. Price at 38. Yet, on her return to the vehicle around 8:00 p.m., Mrs. Price tripped on the car stop in the parking space where the Price vehicle was parked and fell to the ground. See id. at 42.

The car stop was painted light blue, the same color as the paint used to delineate the perimeter of the handicap spaces and the handicap access aisle. See id., Pictures attached to Deposition of Ruth Price & Mark Snow Affidavit, Exhibit 2. The plaintiffs contend that the car stop and perimeter lines were faded at the time of the accident. See Record Document 39-1 at 4. The concrete car stop was 70 inches long by 8 inches wide

---

with ADA regulations.

[2]Sometimes hereinafter referred to as "wheel stops."

by 6 inches high. See Record Document 35, Mark Snow Affidavit at ¶7. The Price vehicle, 74 ½ inches wide, was wider than the car stop. See id., Deposition of Robert A. Lee at 55.

There were no physical defects with the car stops. See id., Mark Snow Affidavit at ¶8. The car stops in the handicap parking spaces were aligned, uniform, were not broken or cracked, and were secured to the ground. See id., Mark Snow Affidavit, Exhibit 2 & Pictures attached to Deposition of Mrs. Price. According to both experts in this case, the handicap parking spaces at the Roadhouse Grill and the car stops in those spaces complied with the ADA federal regulations. See id., Deposition of Robert A. Lee at 45, 50 & 51; Mark Snow Affidavit at ¶8.

In the Roadhouse Grill parking lot, there is a 6.5 foot wide concrete sidewalk running perpendicular to the handicap parking spaces. This sidewalk serves as a handicap accessible route connecting the handicap access aisle with the access route for adjacent parking spaces. See id. at ¶6, Exhibit 3. The ADA requires this access aisle to have a minimum clear space of three feet. See id. at ¶6, Exhibit 4. The car stops at Roadhouse Grill prevent cars from infringing on the accessible route. See id., Mark Snow Affidavit at ¶7. The U.S. Department of Justice ADA Business Brief for Re-striping Parking Lots states that "if the accessible route is located in front of the space, install wheel stops to keep vehicles from reducing width below 36 inches." Id. at ¶7, Exhibit 5.

There is no evidence of any past accidents involving the car stops in the handicap parking spaces at the Roadhouse Grill.

## II. PROCEDURAL BACKGROUND.

On December 2, 2005, the plaintiffs filed suit in the First Judicial District Court, Caddo Parish, seeking damages "that they sustained as the result of a fall suffered by Mrs.

E. Price, on November 2, 2004, on the premises of Roadhouse Grill." Record Document 1, ¶ 2. The plaintiffs named three defendants: Roadhouse Grill, Eastgate, and United Fire.[3] See id., ¶ 1. Roadhouse Grill filed Notice of Removal and a Removal Order was entered on December 6, 2005. See Record Documents 2 & 8.

Roadhouse Grill filed its answer on January 18, 2006 and Eastgate and United Fire filed their answer on February 10, 2006. See Record Documents 10 & 16. Eastgate and United Fire later filed a First Supplemental and Amending Answer and a Second Supplemental and Amending Answer. See Record Documents 27 & 34. Roadhouse Grill also filed a First Supplemental and Amending Answer. See Record Document 31. On January 29 and 30, 2007, the instant Motions for Summary Judgment, seeking dismissal of all of the plaintiffs' claims, were filed. See Record Documents 35 & 37.

## III. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56© to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[3]As set forth later in the instant Memorandum Ruling, Eastgate, lessor, and Roadhouse Grill, lessee, had entered into a ground lease whereby Eastgate leased the ground and Roadhouse Grill constructed its restaurant building, including the parking area.

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56© requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

With these principles in mind, the Court now turns to a review of the claims at issue.

### B. Motion for Summary Judgment filed by Roadhouse Grill.

The plaintiffs have asserted both strict liability and negligence theories of recovery under Louisiana law.

#### 1. Premises Liability (Strict Liability).

Civil Code Articles 2317 and 2317. 1 set forth Louisiana's law on premises strict liability. Article 2317 states:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Under the aforementioned code articles, the plaintiffs must prove that (1) Roadhouse Grill had custody of the concrete car stop; (2) the concrete car stop contained a defect, i.e., a condition creating an unreasonable risk of harm; (3) the defective condition caused the

Mrs. Price's injuries; (4) Roadhouse Grill had actual or constructive knowledge of the defect; and (5) the damage could have been prevented by the exercise of reasonable care. The plaintiff's strict liability claim fails if they do not prove any one of these elements. See Littlefield v. Iberia Bank, 04-1334 (La.App. 5 Cir. 3/15/05), 900 So.2d 925, 928.

Roadhouse Grill concedes, for purposes of its Motion for Summary Judgment, that it had custody of the concrete car stop and that Mrs. Price tripped over the concrete car stop. Thus, the Court will proceed to analyzing whether the concrete car stop contained a defect, i.e., a condition creating an unreasonable risk of harm.

The plaintiffs bear the burden of proving that the "thing" in question is defective. See Manchack v. Willamette Industries, Inc., 621 So.2d 649, 654 (La.App. 2 Cir. 1993). For a defect to create an unreasonable risk of harm, "the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." Durmon v. Billings, 38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 876. Applying Louisiana law, courts have generally held that the simple fact that an accident occurred as a result of an alleged defect does not in and of itself "elevate the condition of the thing to that of an unreasonably dangerous condition." Id. at 877. Courts must consider not only the past accident history of the defect in question, but also "the degree to which a danger may be observed by a potential victim." Id. If the "risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable." Id.; see also Manchack, 621 So.2d at 654 (stating that "evidence of the absence of other accidents at the same place is relevant and admissible as tending to show that the place was not dangerous and that the defendant did not have actual or constructive knowledge of a dangerous condition."). Further, the unreasonable

risk of harm criterion cannot be applied mechanically. See Limberg v. Winn Dixie Louisiana, Inc., 622 So.2d 1178, 1179 (La.App. 4 Cir.1993). Rather, the court "must balance the claims and interests, weigh the risks and the gravity of harm, and consider the individual and societal rights and obligations. The court must balance the probability and magnitude of the risk against the utility of the thing." Id.

There is no summary judgment evidence indicating that the car stop in question had any physical defects or deficiencies. The pictures contained in the record clearly show that the car stops were not out of alignment, were not cracked or broken, and were secured to the ground. See Record Document 35, Mark Snow Affidavit at ¶8; Mark Snow Affidavit, Exhibit 2; Pictures attached to Deposition of Ruth Price.

The plaintiffs allege in their petition that they parked in the second handicap parking space to the right of the entrance to Roadhouse Grill. See Record Document 1 at ¶¶ 8-9. They allege that because this second parking space did not have a 36 inch parking access aisle on the passenger side of this space, it violated the ADA and La. R.S. 40:1733. See id. Further, the plaintiffs contend that the claimed non-compliance with the ADA and Louisiana law rendered the parking space "defective" for purposes of this case. See id. at ¶24. Then, in her deposition, Mrs. Price testified that her party actually parked in the first handicapped space to the right of the entrance, not the second space claimed in the petition. See Record Document 35, Deposition of Mrs. Price at 34, 45-46, 96-97. This handicap parking space was in compliance with the ADA's access aisle requirement. See id., Mark Snow Affidavit, Exhibit 3.

The experts involved in this case have concluded that both handicapped parking spaces complied with the ADA. Specifically, the plaintiffs' expert, Robert A. Lee, testified

that the handicapped parking spaces to the right of the Roadhouse Grill entrance complied with the ADA. See id., Robert A. Lee Deposition at 45 & 51. He further testified that the car stop also complied with the ADA. See id., Robert A. Lee Deposition at 50.[4] Likewise, defense expert Mark W. Snow stated that the handicapped parking spaces and the car stops in those spaces were compliant with the ADA federal regulations. See Record Document 35, Mark Snow Affidavit, ¶8. Mr. Snow found no defects with the car stops and that, in his opinion, the car stops in the handicap parking spaces at the Roadhouse Grill did not present a dangerous condition. See id., Mark Snow Affidavit, ¶8.

Further, the Court has, on its own, reviewed 28 C.F.R. Part 36, which sets forth the ADA standards for accessible design for buildings and facilities. Section 4.6.3 states, in pertinent part:

> **Parking Spaces.** *Accessible* parking spaces shall be at least 96 in . . . wide. Parking access aisles shall be part of an accessible route to the building or facility entrance . . . . ***Two accessible parking spaces may share a common access aisle***.

Record Document 43, Exhibit 3 at 516. The last sentence referenced above is key to this

---

[4] Mr. Lee did state that the elevation from the parking lot to the sidewalk was not compliant with the ADA because there was an inch and a half to three inch height differential between the sidewalk and the parking lot. See Record Document 35, Robert A. Lee Deposition at 47. Yet, he conceded that the change in elevation played no role in the accident. See id., Robert A. Lee Deposition at 49-50. Further, Mrs. Price testified that she did not trip while stepping down from the sidewalk to the parking lot and that she did not even know that there was a height differential between the parking lot and the sidewalk. See id., Deposition of Ruth Price at 74. Thus, the elevation change played no role in the accident.

Mr. Lee also testified that the parking lot was not compliant with the ADA in that it only had four handicap parking spaces and the ADA required five. Notwithstanding any possible ADA noncompliance, the Court notes that the Price party was able to park in a handicapped space. More importantly, the number of handicapped parking spaces played no causal role in Mrs. Price's trip and fall accident.

case, as handicapped spaces one and two shared an access aisle (on the passenger side of space one and the driver's side of space 2) and the plaintiffs argued that because space two did not have a 36 inch parking access aisle on the passenger side of this space, it violated the ADA. Yet, based on the plain language of Section 4.6.3 and the aforementioned expert evidence, the allegation in the petition that the second handicap parking space violated the ADA, and corresponding Louisiana law, is simply an unsupported allegation which is completely contradicted by the competent summary judgment evidence. Thus, the factual question as to what space Mrs. Price tripped and fell has been rendered immaterial, as both spaces complied with the ADA.

In the petition, the plaintiffs also allege there is a "very bright 'mercury' or 'halogen' light . . . [that] shines toward the restaurant . . . [and] make[s] it very difficult to see the ground, or any dark objects located thereon." Record Document 1 at ¶ 12. The plaintiffs contend that such light blinded Mrs. Price and she was not able to see the car stop. See id. at ¶ 14. Yet, despite this allegation, Mrs. Price testified in her deposition that she was "not aware of much of anything about the lighting" and had no recollection of the lighting at all. Record Document 35, Deposition of Ruth Price at 52, 100-101. In light of the admissions in Mrs. Price's deposition, there is simply no summary judgment evidence to support the allegation that lighting played a role in Mrs. Price's trip and fall accident.[5]

The above analysis clearly indicates that the car stop at issue in this case was not

---

[5] In his deposition, Mr. Price stated that he was blinded by a "vapor light on 70th Street about 125 feet away from the Roadhouse Grill." Record Document 35, Jerry O. Price Deposition at 14-15. Yet, there is no allegation that Mr. Price tripped and fell due to this alleged lighting condition.

physically defective;[6] the first and second handicapped parking spaces were ADA compliant; the car stop at issue was ADA compliant; and that lighting played no role in Mrs. Price's trip and fall accident. Yet, even if this Court were to assume for purposes of the instant Memorandum Ruling that the car stop was a "defect" or was somehow defective, the plaintiffs must still establish that the car stop created an unreasonable risk of harm, i.e., the defect constituted a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. See Durmon, 873 So.2d at 876.

The car stops in the Roadhouse Grill parking lot were painted light blue, a visible contrast with the black asphalt pavement of the parking lot. Yet, the plaintiffs contend that the car stops were a tripping hazard due to the "blue, faded" color on black asphalt. See Record Document 39-1 at 10. This argument is unpersuasive, as Roadhouse Grill painted the car stop a contrasting color than the parking lot so that there would be a visible change in color. See generally Ports v. Circle K Stores, Inc., 395 F.Supp.2d 442, 448 (W.D.La. 2005); Williams v. Orleans Parish School Board, 541 So.2d 228, 231 (La.App. 4 Cir.1989) (reasoning that where the sidewalk and the driveway were one light cement material and the parking lot was a darker asphalt, there was no defect creating an unreasonable risk of

---

[6]In negligence cases, Louisiana courts have considered the condition of the car stop, including the following factors: misalignment; was the car stop broken or exposing deteriorated concrete; was the car stop protruding metal; had the car stop been moved; and was the car stop fastened to the ground. See generally Leonard v. Ryan's Family Steak Houses, Inc., 2005-0775 (La.App. 1 Cir. 6/21/06), 939 So.2d 401; Barnhill v. La. Power & Light Co., 28,903 (La.App. 2 Cir. 2/26/97), 690 So.2d 890. In the presence of the aforementioned conditions, it appears that courts lean toward a finding of unreasonably dangerous or, at a minimum, find a genuine issue of material fact and allow the case to proceed to trial.

harm, insomuch as the risk of harm would have been obvious to a person exercising ordinary care and prudence under the circumstances).  Here, the color differential was sufficient to notify a prudent person using ordinary care under the circumstances that there was an elevational change between the parking lot and the car stop.  This is especially true as to Mrs. Price, who had been to the Roadhouse Grill at least six times in the year preceding her accident and had parked in the same general location, and probably in the same handicap spot, before.

In further applying the unreasonable risk of harm criterion to this case, the Court must balance the probability and magnitude of the risk to individuals such as Mrs. Price against the utility of the car stop.  See Limberg, 622 So.2d at 1179.  As to risk, the Court again notes that the car stop at issue in this case was painted a different color than the parking lot; was aligned, uniform, unbroken, and not cracked; and was secured to the parking lot.  As to social utility, Mr. Lee, the plaintiffs' expert, opined that concrete car stops were per se dangerous.  He advocated against the use of car stops; yet, he also conceded the purpose of car stops and conceded that the ADA specifically references car stops.  See Record Document 35, Robert A. Lee Deposition at 52-54, 66.  Mr. Lee also testified that according to his measurements, if Mr. Price had properly centered his vehicle when parking, the accident would not have occurred because the car stop would not have been protruding from a properly centered vehicle.  See id., Robert A. Lee Deposition at 55-56.  Even Mrs. Price stated in her deposition that she was familiar with car stops and their purpose – to stop cars from going onto sidewalks and to guide people as to where to park.  See id., Deposition of Ruth Price at 53.

Mr. Snow, Roadhouse Grill's expert, attested as to the utility of the car stops, stating

that they are used to prevent cars from parking too close to the sidewalk and limiting the route in front of the spaces to less than the 36 inches as is required by the ADA. See id., Mark Snow Affidavit, ¶7. Mr. Snow further stated that the use of curb stops to prevent infringement into the accessible area in front of parking vehicles is common practice used in parking lot design and meets the minimum ADA handicap parking standards. See id. According to Mr. Snow, the Department of Justice even recommends using car stops to prevent infringement on the accessible route. See id., Mark Snow Affidavit, Exhibit 5. In his opinion, the car stops in the handicap parking spaces at the Roadhouse Grill did not present a dangerous condition. See id., Mark Snow Affidavit, ¶8.

Here, the Court has viewed all of the record evidence and finds that the utility of the car stop outweighs any risk as a possible tripping hazard. Car stops prevent, or at least significantly decrease, the risk of bumping into a pedestrian and/or encroaching on the walk way in front of the restaurant. Often times, the tripping hazard of the car stops is eliminated because they are covered by properly parked vehicles. Further, as the Court is not to apply the unreasonable risk of harm criterion mechanically, it is important to note that Roadhouse Grill had no knowledge of anyone, other than Mrs. Price, falling over a car stop. See id., Deposition of Davell McKay at 5, 6-7, 10. There is also record evidence indicating that the use of car stops is a common practice. The law holds that where the risk is obvious, universally known and easily avoidable, the risk is not unreasonable. See Durman, 873 So.2d at 877. Mrs. Price was also charged with using ordinary care under the circumstances, seeing what should have been seen, and observing her course to see if her pathway was clear. See Durman, 873 So.2d at 877; Trice v. Isaac, 99-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843, 845; Williams, 541 So.2d at 230. And while the accident

did occur at night, a pedestrian such as Mrs. Price must proceed with greater caution at night than in daylight.  See Williams, 541 So.2d at 230.  She has failed to discharge this legal duty.

Because there is simply nothing in the summary judgment record to support a finding that the car stop at issue was defective and/or created an unreasonably dangerous condition that may have caused Mrs. Price to fall, the plaintiffs' strict liability claims against Roadhouse Grill must fail and summary judgment is granted.

### 2. Premises Liability (Negligence).

"[N]egligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable and foreseeable risk of harm." Kendall v. Weingarten Realty Management Co., 33,903 (La.App. 2 Cir. 9/27/00), 769 So.2d 171, 175.  As discussed, this Court has determined that the car stop at issue in this case did not pose an unreasonable risk of harm to Mrs. Price.  Because the car stop was not an unreasonable risk of harm, the Court must conclude that Roadhouse Grill did not act negligently towards Mrs. Price.  See id.  Accordingly, summary judgment is granted as to the plaintiffs' negligence claims.

### C. Motion for Summary Judgment filed by Eastgate and United Fire.

Eastgate and United Fire adopted the Motion for Summary Judgment filed by Roadhouse Grill.  In addition to the reasons set forth in Roadhouse Grill's Motion for Summary Judgment, Eastgate further moved for summary judgment pursuant to La. R.S. 9:3221 and the jurisprudence interpreting that statute.

Section 3221 states:

> [T]he owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

La. R.S. 9:3221. On October 18, 1996, Eastgate, as landlord, entered into a ground lease with Roadhouse Grill, as tenant. According to the lease, Eastgate leased the ground and Roadhouse Grill constructed its restaurant building, including the parking area, and made rental payments. Article 7, entitled Repairs and Maintenance, of the ground lease states:

> Tenant agrees, at its expense without reimbursement or contribution by a landlord, to keep in good condition and maintain and replace, if necessary, all improvements to the land including, but not limited to, the building, the foundations, the exterior paint, the plumbing system, the electrical system, the utility lines and connections to the demised premises, the sprinkler mains, if any, structural systems including, without limitation, the roof and load bearing walls, floor slabs and masonry walls, the heating, ventilating and air condition system (the "HVAC"), the parking areas, landscaping and other exterior areas on the land.

Record Document 37-2, Exhibit 3 at 000008. Eastgate and Roadhouse Grill also entered into an Addendum to Ground Lease. Such addendum amended and supplemented the ground lease of October 18, 1996 and provides, in pertinent part:

> 1. Tenant is to remove two existing parking lot light poles and bases and re-connect underground electrical service to keep in tact the balance of the parking lot lighting in its original state. The removed poles and fixtures will remain the property of the shopping center and are to be stored in an area designated by the Owner.
>
> 2. The maintenance of the new parking lot lighting being installed by Roadhouse Grill will remain their responsibility.
>
> . . .
>
> 6. All of the site design, i.e. parking ratios and space sizes, ADA regulations and paving details must be in accordance with Louisiana regulations and meet the federal ADA, state and local building codes.

Id. at 000031.

This Court has ruled that the car stop at issue in this case does not constitute a defect in the premises. Notwithstanding, even if the car stop constituted a defect, Section 3221 and the provisions of the ground lease absolve Eastgate, and its insurer United Fire, of liability unless Eastgate knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time. See generally Savoy v. DeLaup, 442 So.2d 1209 (La.App. 5 Cir. 1983); Fontan v. Estopinal, 529 So.2d 1330 (La.App. 5 Cir. 1988); Jones v. Gatusso, 00-1654 (La.App. 5 Cir. 2/14/01), 782 So.2d 11; Dufrene v. Doctor's Hospital of Jefferson, 02-654 (La.App. 5 Cir. 12/11/02), 836 So.2d 309.

Eastgate has provided the deposition testimony of Davell McKay, a manager at Roadhouse Grill at the time of Mrs. Price's accident:

> Q: Okay. Do you happen to know who maintained the lighting around Roadhouse? That would have been Roadhouse? For example, if bulbs needed to be replaced?
> A: Yes, ma'am. Now, what I do know about the lease, we had a ground-up lease, so pretty much anything that happed to that – anything that happened, you know, to the property as far as, you know, something being wrong with the parking lot or a light bulb being out or something like that, we were responsible for getting it fixed.
> Q: We meaning Roadhouse?
> A: Roadhouse, yes, sir.

Id., Exhibit 1 at 12-13. Eastgate also provided the deposition testimony and affidavit of William McFadden, the local property manager for Sterling Properties. See id., Exhibit 2. Sterling Properties manages the premises owned by Eastgate and leased to Roadhouse Grill. See id., Exhibit 3. Mr. McFadden explained that the landlord, in this case Eastgate, had no ownership of the Roadhouse Grill building or improvements. See id., Exhibit 2 at 10. Further, according to Mr. McFadden, Eastgate did not have custody of the premises

leased to Roadhouse Grill. See id., Exhibit 3 at 1. Mr. McFadden also confirmed that neither he nor Eastgate had any knowledge of any prior similar accidents as that suffered by Mrs. Price, nor had he had any defects reported to him in his capacity as manger of the property. See id., Exhibit 3 at 2. Based on the aforementioned summary judgment evidence, it appears that Eastgate has negated an essential element of the plaintiffs' claim – that Eastgate knew or should have known of a defect in the premises which allegedly caused Mrs. Price's injuries.

In opposition to Eastgate's and United Fire's motion, the plaintiffs have questioned whether there was a binding lease in existence between Eastgate and Roadhouse Grill. See Record Document 41-1 at 4. This argument fails. The Ground Lease between Eastgate and Roadhouse Grill, and the Addendum to such lease, is part of the summary judgment record. See Record Document 37-2, Exhibit 3. While Eastgate has "whited out" the amount of the rental payments under the lease in order to protect proprietary information, there is no doubt as to the legal relationship of lessor/lessee between Eastgate and Roadhouse Grill. See id., Exhibit 3 at 000005-000006. At a minimum, both parties are estopped to deny the existence of a valid lease, as rent has been paid and possession has been delivered and undisturbed.

Based on the foregoing analysis, the Court finds there are no genuine issues of material fact as to the plaintiffs' claims against Eastgate and United Fire and summary judgment is granted.[7]

---

[7]The plaintiffs also contend that because the site plan "clearly shows handicap parking spaces on the west side of the building, and that the second on the right from the entrance does not have an access aisle," knowledge of a defect should be imputed to Eastgate. Record Document 41-1 at 5. This argument fails for the reasons previously

**IV. CONCLUSION.**

For the reasons stated above, the Motions for Summary Judgment (Record Documents 35 & 37) be and are hereby **GRANTED**. All of plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 15th day of May, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

discussed in the context of Roadhouse Grill's Motion for Summary Judgment, namely that both the first and second handicapped parking spaces were in compliance with the ADA.

The plaintiffs also present a somewhat specious argument, the significance of which is simply unclear to the Court, that Ashy Brown is the owner of the property at issue based on a Certificate of Occupancy and Statement of Claim or Privilege Labor and material Lien. See id. at 6-7. Eastgate believes this argument is an attempt to convince the Court that Eastgate was responsible for the building and improvements at the accident site. To the extent that it was necessary, Eastgate dispelled the argument by explaining that liens are always filed against the owner of the land and operate as an encumbrance upon the land and that construction permits always list the owner of the land where the construction is occurring.